UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JOE BUFOGLE,                                      )
Personal Representative of the Estate of          )
Brandon Scott Looper, Deceased,                   )
                                                  )
                Plaintiff,                        )
                                                  )
v.                                                )   Case No. 11-CV-0657-CVE-TLW
                                                  )
EQUITY INSURANCE COMPANY,                         )
                                                  )
                Defendant.                        )

**OPINION AND ORDER**

Now before the Court are defendant's Motion for Summary Judgment (Dkt. # 19), and Plaintiff's Motion for Partial Summary Judgment (Dkt. # 24). Defendant Equity Insurance Company (Equity) argues that Brandon Scott Looper's insurance policy was cancelled due to non-payment before he was involved in a fatal automobile accident, and that Equity is not required indemnify his estate for claims arising out of the accident. Plaintiff Joe Bufogle, Personal Representative of the Estate of Brandon Scott Looper (the Estate), argues that the insurance policy remained in effect at the time of the accident, and that Equity has breached the insurance contract and acted in bad faith by refusing to defend and indemnify the Estate against third-party claims.

**I.**

On June 16, 2008, Looper applied for automobile insurance with Equity. Dkt. # 20, at 22-25. Equity approved Looper's application for automobile insurance and issued policy no. N35-952622 (the Policy), with an effective period of June 16 to December 16, 2008. The Policy provided bodily injury liability coverage of $25,000 per person and $50,000 per accident. Id. at 33. Looper

made a downpayment of $120 on June 16 or 24, 2008,[1] and his first installment payment was due on June 29, 2008. Dkt. # 23-2, at 1. Equity originally quoted Looper a six-month premium of $643 but, effective June 23, 2008, the premium was increased to $907.[2] Dkt. # 20, at 22; Id. at 30. The payment schedule did not change as a result of the increase of the Policy premium. The policy period on each document sent to Looper was June 16 to December 16, 2008, and the change of the premium amount also did not affect the original effective date of the policy. See Dkt. # 23-3, at 2. The Policy provides:

> 2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:
>
>    a. at least 10 days notice:
>
>       (1) if cancellation is for nonpayment of premium . . . .

Dkt. # 20, at 49. The Policy also states that the "effective date of cancellation stated in the notice shall become the end of the policy period." Id. at 50.

Looper did not make the first installment payment by June 29, 2008, and Equity sent Looper notice that his policy would cancel on July 13, 2008 if he did not pay $208. Dkt. # 20, at 29. The notice clearly stated a cancellation date of July 13, 2008 and advised Looper that "[i]f your payment is not postmarked before the cancellation date, your policy will cancel on 07-13-08 at 12:01 A.M."

---

[1] There is conflicting evidence as to whether Looper made the downpayment on June 16 or 24, 2008. The application for insurance submitted by Looper states that a $120 downpayment was made on June 16, 2008. Dkt. # 20, at 22. However, Equity has submitted an account statement showing that the downpayment was made on June 24, 2008. Dkt. # 26-1, at 7. This factual issue does not impact the ruling on the pending motions for summary judgment.

[2] Equity states that Looper listed an incorrect driver's license number on his application, and that Equity learned that Looper had additional driving infractions after it processed Looper's application using the correct license number. Dkt. # 26, at 3.

Id. On July 11, 2008, Looper contacted the insurance agency who sold him the Policy, the Winnett Insurance Agency, and asked if he could make a partial installment payment. Dkt. # 26-1, at 18. Looper was advised that a partial payment would not be accepted, and that the Policy would cancel on July 13, 2008 if he did not pay the full installment payment to Equity. Id. Looper called the insurance agency on July 15, 2008 to ask how much he would have to pay to "re-write" the Policy. Id.

On July 17, 2008, Looper was involved in an automobile accident, and both Looper and a passenger in the vehicle, Matthew Ennes, were killed. The Winnett Insurance Agency received a call from the Wright Funeral Home on July 21, 2008 to determine if Looper had insurance coverage for medical or funeral expenses, and the funeral home was advised that the Policy was cancelled on July 13, 2008. Id. at 18. Looper's family made several calls to the insurance agency, and Larry Winnett sent a fax to Equity advising it that "[t]hese folks had better be careful or they could be bordering on fraud with some of these actions." Id. at 17. Winnett also stated that Looper "was aware his insurance was cancelled and what it would take to reinstate it." Id. Ennes' parents sued the Estate in the District Court of Wagoner County, Oklahoma, and the Estate demanded that Equity provide a defense to the pending claims. Dkt. # 23-6, at 1. Equity refused to provide a defense to the Estate or tender the policy limit to the plaintiffs in the state court lawsuit because the Policy was no longer in force on the date of the accident. Id. at 2. The Estate did not defend against the Ennes' claims and default judgment was entered against the Estate in the amount of $450,000. Dkt. # 23-5.

On September 16, 2011, the Estate filed this case against Equity in the District Court of Creek County, Oklahoma, and Equity removed the case to this Court on October 24, 2011. See Dkt. # 2. The Estate alleges claims of breach of contract and bad faith against Equity, and argues that

the Policy remained in force on July 17, 2008 because Equity did not comply with Oklahoma law when it allegedly cancelled the Policy due to nonpayment. The Estate has filed a motion for partial summary judgment on the issue of insurance coverage. Dkt. # 24. Equity has filed a motion for summary judgment as to plaintiff's claims and asserts that it had no duty to defend or indemnify the Estate for claims arising out of the automobile accident because on the date of the accident the Policy was already cancelled due to nonpayment. Dkt. # 20.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the

4

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiff argues that defendant's notice of cancellation was equivocal and ineffective under Oklahoma law to provide adequate notice of its intent to cancel the Policy on July 13, 2008. Dkt. # 23, at 9-15. Plaintiff also argues that defendant's belief that the Policy was cancelled is not a basis for a legitimate coverage dispute precluding liability for bad faith. Id. at 18-28. Defendant argues that it provided clear and unequivocal notice to Looper that the Policy would cancel on July 13, 2008 if he failed to pay the premium and Looper's conduct shows that he understood the notice of cancellation, and defendant was not required to defend or indemnify the Estate against the Ennes' claims. Dkt. # 20, at 7-11. Even if the Court were to find a genuine dispute as to a material fact concerning insurance coverage, defendant argues that a legitimate coverage dispute existed and it is entitled to summary judgment on plaintiff's bad faith claim. Id. at 12-20.

### A.

The parties dispute whether the Policy was still in force as of July 17, 2008. Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017,

1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering, 912 P.2d at 869. If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy. Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)). When construing an ambiguous term in an insurance contract, a court must consider "not what the drafter intended . . . but what a reasonable person in the position of the insured would have understood [the ambiguous provision] to mean." American Economy Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla. 2004).

The Oklahoma Supreme Court has considered the precise policy language at issue, and it found that Equity's former procedures for cancelling an insurance policy due to non-payment were ineffective. In Equity Insurance Company v. City of Jenks, 184 P.3d 541 (Okla. 2008), Equity brought a declaratory judgment action seeking a ruling that an automobile insurance policy issued to Cleo Smith was cancelled after Smith failed to make an installment payment. On April 3, 2006, Equity issued an insurance policy to Smith and it mailed him an invoice the following day. The invoice stated:

> CANCELLATION NOTICE IF YOU DO NOT PAY YOUR BILL

6

> If your payment is not postmarked prior to the cancellation date, your policy will automatically cancel on 5-03-06, at 12:01 A.M. If payment is received on or after the cancellation date, a new policy may be issued. You will be assessed a fee up to $25.00 for the issuance of any new policy. No coverage will exist for losses occurring between the cancellation date and the effective date of any newly issued policy. If policy cancels for nonpay, you may still owe earned premium.

Id. at 543. The next installment payment was due on April 28, 2006 and Smith did not submit a payment. Id. at 542. On May 3, 2006 at 5:07 p.m., Smith was involved in a single vehicle accident in the City of Jenks, Oklahoma (Jenks), and Jenks demanded that Smith pay for the property damage resulting from the accident. Smith's attorney subsequently demanded that Equity accept liability and pay for the property damage, but Equity rejected Smith's claim on the ground that the insurance policy had been cancelled due to Smith's failure to make an installment payment. Id. Equity sought a declaratory judgment that the policy had cancelled before the accident occurred, because Smith failed to pay his premium in compliance with the combined invoice/notice of cancellation that was sent to him on April 4, 2006. The Oklahoma Supreme Court stated that the majority view is that an insurer may not preemptively give notice of cancellation before nonpayment occurs and that any notice of cancellation must be "definite and not conditional." Id. at 544. The Oklahoma Supreme Court adopted the majority view and held that an anticipatory cancellation for non-payment is ineffective under Oklahoma law. Id. at 545. To cancel an insurance policy for non-payment, the insurer must wait until the insured fails to make a scheduled payment and give the insured at least 10 days notice before the policy is cancelled. Id. The Oklahoma Supreme Court found that this result was required under the plain language of the insurance policy, which required 10 days notice to the insured before cancellation for nonpayment. Id.

Plaintiff argues that the notice of cancellation sent to Looper violated Equity and it was not effective to cancel the Policy. Plaintiff claims that defendant merely told Looper that it "may"

7

cancel the Policy on July 13, 2008 if he failed to pay $208, and the notice of cancellation was equivocal. Dkt. # 23, at 10. However, it is clear that defendant has revised its cancellation procedures in light of the Oklahoma Supreme Court's decision in Equity. In this case, Looper received a payment schedule and knew that his first installment payment was due on June 29, 2008. Dkt. # 20, at 26. Unlike in Equity, defendant did not rely on a combined invoice/notice of cancellation to cancel the Policy but, instead, Equity sent Looper notice of cancellation after he failed to make his first installment payment. In compliance with Equity and the cancellation procedures in the Policy, defendant gave Looper unequivocal notice that the Policy would cancel on July 13, 2008 if he failed to pay the full amount owed. Dkt. # 20, at 29 ("If your payment is not postmarked before the cancellation date, your policy will cancel on 07-13-08 at 12:01 A.M."). Plaintiff characterizes the notice of cancellation as an "invitation" to submit a payment, but the notice was clear that the Policy would cancel on the specified date if no payment was received. See Dkt. # 23, at 12. Defendant's method of cancellation of the Policy due to nonpayment complied with Oklahoma law. See Allstate Indem. Co. v. Amos, 2011 WL 1301526 (W.D. Okla. Mar. 31, 2011) (insurer properly cancelled policy under Equity by sending a notice of cancellation after non-payment of premium and giving the insured notice of the date of cancellation if payment were not received by insurer).

Plaintiff claims that Looper reasonably expected to have at least 30 days of coverage after making his downpayment of $120 and, using an effective date of June 23, 2008, plaintiff asserts that the Policy was still in effect on July 17, 2008. Id. at 13-15. This argument was raised in Equity but the Oklahoma Supreme Court found it unnecessary to reach this issue. Equity, 184 P.3d at 542. If a court finds that a policy provision or exclusion is ambiguous, the doctrine of reasonable

8

expectations must be applied to construe ambiguous policy language. See Yaffe Cos., Inc. v. Great American Ins. Co., 499 F.3d 1182, 1185 (10th Cir. 2007); Max True Plastering Co., 912 P.2d at 865. The Oklahoma Supreme Court has stated:

> Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean. Thus, in construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma now looks to the "objectively reasonable expectations" of the insured to fashion a remedy.

Spears v. Shelter Mut. Ins. Co., 73 P.3d 865, 868 (Okla. 2003). If a court finds that any policy provision or exclusion is ambiguous, the understanding of a reasonable person in the same position as the insured is applied, but this does not automatically mean that the insured's interpretation will prevail. See Max True Plastering Co., 912 P.2d at 867 ("The reasonable expectation doctrine is a double-edged sword-both parties to the insurance contract may rely upon their reasonable expectations."); see also Andres v. Oklahoma Farm Bureau Mut. Ins. Co., 227 P.3d 1102, 1105 (Okla. Civ. App. 2009) (the reasonable expectations doctrine is "designed to protect both the insured from the potential traps of poorly drafted policy language, and to protect the insurer from loose or ill-considered judicial interpretation when policy language is clear").

Plaintiff does not identify any specific provision of the Policy that is allegedly ambiguous, but it argues that Looper could have reasonably expected to have at least 30 days of coverage after making a downpayment. Plaintiff's argument fails for two reason. First, plaintiff has not identified any language in the Policy or any action by defendant giving rise to an expectation that Looper would be covered for 30 days based only on the downpayment. The Oklahoma Supreme Court has limited application of the reasonable expectations doctrine to "situations in which the policy contains an ambiguity," because a broader application would result in courts "engaging in wholesale

9

rewriting of insurance policies" in any situation in which an insured claims that he subjectively believed he had insurance coverage. Simpson v. Farmers Ins. Co., Inc., 981 P.2d 1262, 1265 (Okla. 1999). The reasonable expectations doctrine does not apply in vacuum and the Court will not speculate as to whether Looper was entitled to 30 days of coverage without some reference to the language of the Policy, and no such language can be found. Plaintiff also cites no statutory authority or decisions from the Oklahoma Supreme Court suggesting that such coverage exists as a matter of law. Second, plaintiff relies on the wrong effective date of the Policy when calculating the alleged 30 day period. Plaintiff relies on an amended declarations page with an effective date of June 23, 2008, but this document plainly states that the Policy period is June 16 to December 16, 2008. Dkt. # 23-3, at 2. Even if the Court were to calculate a 30 day period from June 16, 2008, the Policy would have expired on July 16, 2008, or at the latest at 12:01 a.m. on July 17, 2008. Thus, the Policy would not have been in force at the time of the accident and Looper would not have liability coverage for the Ennes' claims.

Defendant has shown that the Policy was cancelled due to nonpayment on July 13, 2008 and Looper was not covered when the automobile accident occurred on July 17, 2008. Defendant is entitled to summary judgment on plaintiff's breach of contract claim, and plaintiff's motion for summary judgment as to insurance coverage should be denied.

**B.**

Plaintiff claims that defendant acted in bad faith by failing to provide a defense against the Ennes' claims and by refusing to indemnify plaintiff. Much of plaintiff's argument as to bad faith is disposed of based on the Court's finding that defendant properly denied the Estate's insurance claim. However, plaintiff argues that the existence of a legitimate coverage dispute does not

completely resolve its bad faith claim, and the Court will consider plaintiff's arguments in support of its bad faith claim.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured." Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977). Violation of this duty gives rise to an action in tort. Id. "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions." Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989). The Oklahoma Supreme Court and the Tenth Circuit have made clear that an insurer does not subject itself to a claim of bad faith merely by disputing coverage. "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) (citing Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla. 1984)). "The decisive question is whether the insurer has a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'" Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991) (quoting Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987)). In order to succeed on a claim for bad faith, the claimant must be able to prove that the insurer's actions went beyond an act of simple negligence; however, it is not necessary to prove that the insurer acted recklessly to prove liability, even though recklessness is a requirement for punitive damages in a bad faith claim. Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1094 (Okla. 2005). The Court can consider only the "facts known or knowable about the claim at the time the insured requested the insurer to perform its contractual obligation."

11

Sims v. Travelers Ins. Co., 16 P.3d 468, 471 (Okla. Civ. App. 2000); see also Timberlake Construction Co. v. United States Fidelity & Guaranty Co., 71 F.3d 335, 340-41 (10th Cir. 1995).

Plaintiff's argument is based on an assumption that defendant relied on an incorrect interpretation of Oklahoma law when denying plaintiff's demand for defense and indemnification. However, the Court has already determined that defendant complied with Equity and the Policy when cancelling Looper's insurance policy and that defendant's denial of the insurance claim was correct. If defendant had persisted in using an anticipatory cancellation procedure after Equity, this would likely have constituted bad faith as a matter of Oklahoma law. However, defendant revised its cancellation procedures in light of Equity and it properly cancelled Looper's Policy for non-payment using a dual-notice procedure. First, defendant provided Looper a payment schedule that did not contain an anticipatory cancellation in the event of non-payment. Second, defendant sent Looper unequivocal notice that his policy would cancel on July 13, 2008 if he failed to make the payment that was due on June 29, 2008. Even if the Court had found a genuine dispute as to a material fact on the issue of insurance coverage, defendant's actions show that it made a good faith attempt to follow Oklahoma law concerning the cancellation of an insurance policy for non-payment, and it would not be liable to plaintiff for bad faith.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Dkt. # 19) is **granted**, and Plaintiff's Motion for Partial Summary Judgment (Dkt. # 24) is **denied**. A separate judgment is entered herewith.

**DATED** this 22nd day of August, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE